DICTOGRAPH PRODUCTS, INC., Appellant-Respondent, *v.* EMPIRE STATE HEARING AID BUREAU, INC., et al., Respondents-Appellants.

First Department, November 6, 1957.

*Theodore F. Tonkonogy* for appellant-respondent.

*George F. Halperin* of counsel (*Leonard C. Shalleck* with him on the brief; *Edwin B. Wolchok,* attorney), for respondents-appellants.

VALENTE, J. Defendants appeal from an order denying their motion to vacate or modify a consent decree entered on November 6, 1953. That decree enjoins defendants from disparaging or interfering with plaintiff's business or good name; restrains them from engaging in, or being employed or interested in, any hearing aid business in the boroughs of Brooklyn and Manhattan in the city of New York for a period of five years; forbids the use of plaintiff's customers lists by defendants; and restrains the direct or indirect transfer of the ownership of defendants' business to one Ethel Murray (a former employee of plaintiff) or to any third party except on condition that said Ethel Murray be not employed by it. Additionally, the decree directs the surrender of all customers lists to plaintiff, and provides for liquidated damages for violation of the injunctive provisions.

Plaintiff appeals from a separate order denying its cross motion to punish defendants for contempt for violating the decree of November 6, 1953.

Plaintiff manufactures hearing aids, conducting a nationwide business mainly through distributor agencies. Defendant Barth, for a long time before December, 1952, was employed by plaintiff, and was in charge of its store on 49th Street, in New York City. Barth resigned in December, 1952. After working for a hearing aid company in Chicago, he returned to New York in 1953, formed the defendant corporation and commenced doing business in Manhattan.

Not long thereafter, plaintiff discovered that defendants were soliciting its customers and were deprecating its products in order to sell their own. Following an investigation, plaintiff concluded that certain missing records, containing the names and addresses of customers, as well as file cards, were in the possession of defendants. Upon execution of a search warrant which plaintiff obtained from the Court of General Sessions, the missing records, as well as certain used hearing aid transmitters, were found in defendants' premises. At a hearing before a Judge of that court on October 1, 1953, defendant Barth admitted that all the property seized under the search warrant belonged to the plaintiff, and consented to its return to plaintiff.

On November 4, 1953, Barth and his attorney signed a stipulation consenting to the decree of November 6, 1953. Special Term correctly found that the stipulation was not signed under threats of criminal prosecution. Moreover, it is evident that the decree, entered on consent, was justified by the facts then existing.

However, a Court of Equity has inherent power to change its decrees where there has been a change of circumstances which would make continued enforcement of the injunctive process inequitable, oppressive and unjust or in contravention of the policy of the law. (*United States* v. *Swift & Co.*, 286 U. S. 106; *Enterprise Window Cleaning Co.* v. *Slowuta*, 273 App. Div. 662, affd. 299 N. Y. 286; *Manufacturers Mut. Fire Ins. Co.* v. *Hopson*, 176 Misc. 220, 227, affd. 262 App. Div. 731, affd. 288 N. Y. 668.) In Freeman on Judgments (5th ed., Vol. 1, § 253, p. 511), it is said: '' And where the further enforcement of a final decree of perpetual injunction has, by reason of subsequent events, become inequitable, the court may vacate or modify it, though even here the court's action on the motion is more in the nature of a stay of the process of enforcement than a vacation of the decree.''

We have concluded that although the decree herein was adapted to the needs that existed at the time of its entry, its continuance is no longer warranted, and that its enforcement, in view of the change of circumstances, will effect an injustice and will contravene public policy.

It appears that on December 9, 1953, defendant Barth signed an agreement with plaintiff whereby he was appointed as a non-exclusive agent for plaintiff in New York City, and in connection therewith, a stipulation was executed suspending enforcement of the injunctive provisions of the decree of November 6, 1953 during the existence of the agreement. In February, 1954, the agency agreement was supplanted by a distributor agreement containing the same provision for suspension of the injunction decree. On August 26, 1955, plaintiff cancelled the distributor agreement. The affidavits are in dispute as to the cause for cancellation, defendant Barth averring that it was because of his failure to accede to plaintiff's demand to desist from promoting the sale of any other company's product. It should be noted here that the practice of plaintiff in making contracts with exclusive-dealing clauses with independent distributors was condemned by the Federal Trade Commission as in violation of the Clayton Act. The Commission's order directing that such provisions be eliminated from contracts with independent distributors was sustained in *Dictograph Prods.* v. *Federal Trade Comm.* (217 F. 2d 821).

The court below in disposing of the motion to punish defendants for contempt, aptly said: '' It goes without saying that a court has a right to assume that its decrees are sought for legitimate purposes, and that they will not be used to effect a contractual relationship, or to police such relationship when brought into existence, or for any ulterior purpose. The parties cannot, by agreement between themselves, modify or suspend a decree of the court (*Encyclopedia Britannica* v. *Warner,* 172 F. 1012, 1014–16), or permit it to become dormant, and then, without the sanction of the court (30 C. J. S., Equity, sec. 621), reinstate or revive its provisions.''

Agreeing as we do with this statement of the law, we are in accord with the denial of the motion to punish the defendants for contempt; but it also impels us to grant defendants' motion to vacate the decree of injunction. We cannot view with equanimity trafficking in an injunction decree of the court. The drastic remedy it affords must not be perverted by the parties into an adjunct to their commercial affairs. Where the equity power of the court is invoked to prevent a threatened wrong, the recipient of the court's favor will not be permitted to engage in a course of conduct incompatible with his antecedent pleas for relief. When plaintiff herein resumed its business relationship with defendant Barth after it had obtained the decree, that conduct was so inconsistent with the spirit of the decree as to call for its vacatur, notwithstanding the ineffectual agreement to

suspend its operation. Therefore, the motion to vacate the decree should have been granted.

The order denying defendants' motion to modify the decree should be reversed and the motion granted, with costs. The order denying plaintiff's motion to punish for contempt should be affirmed.

PECK, P. J., BREITEL, BOTEIN and RABIN, JJ., concur.

Order denying defendants' motion to modify the decree unanimously reversed and the motion granted, with costs. Order denying plaintiff's motion to punish for contempt affirmed. Settle order.