■ Robert G.A. Thompson et al., Plaintiffs, and Natania Reuben, Appellant, v 76 Corp. et al., Defendants, and Jamal Barrow, Also Known as "Shyne," Respondent. DeSimone, Aviles, Shorter & Oxamendi, LLP, Nonparty Appellant; Sandback, Birnbaum & Michelen, Nonparty Respondent. [830 NYS2d 564]—

In an action to recover damages for personal injuries, the plaintiff Natania Reuben appeals, and the nonparty DeSimone, Aviles, Shorter & Oxamendi, LLP, separately appeals, as limited by their respective briefs, from so much of an order of the Supreme Court, Kings County (Vaughan, J.), dated April 26, 2006, as granted the motion of the defendant Jamal Barrow, also known as "Shyne," to release the sum of $100,000 to Sandback, Birnbaum & Michelen from certain funds held in escrow pursuant to a previously-issued preliminary injunction and the nonparty DeSimone, Aviles, Shorter & Oxamendi, LLP, additionally appeals from those portions of the order which, sua sponte, directed it to turn over its file on the matter to Sandback, Birnbaum & Michelen, and adjourned other motions for oral argument to June 15, 2006.

Ordered that the appeal by the nonparty DeSimone, Aviles, Shorter & Oxamendi, LLP, from so much of the order as sua sponte directed it to turn over its file on the matter to Sandback, Birnbaum & Michelen, and, sua sponte, adjourned other motions for oral argument to June 15, 2006, is dismissed, as no appeal lies as of right from an order that does not decide a motion made on notice, and leave to appeal has not been obtained (see CPLR 5701 [a] [2]); and it is further,

Ordered that the order is reversed insofar as reviewed, on the law and in the exercise of discretion, and the motion of defendant Jamal Burrow, also known as "Shyne," is denied; and it is further,

Ordered that one bill of costs is awarded to the plaintiff Natania Reuben, payable by the defendant Jamal Barrow, also known as "Shyne."

The defendant Jamal Barrow, also known as "Shyne" (hereinafter Barrow), was convicted of assault in the first degree and numerous other offenses for his role in a shooting incident at a club on December 27, 1999. Following his conviction, Barrow was sentenced on June 1, 2001 to concurrent terms of imprisonment with a maximum term of 10 years. Meanwhile, the alleged

victims of Barrow's crimes commenced this tort action to recover damages for their personal injuries. The plaintiff Natania Reuben alleges that she has sustained a host of serious injuries as a result of being shot in the face by Barrow, and she claims substantial damages.

While this civil action was pending, Barrow entered into a recording agreement with Island Def Jam Music Group (hereinafter Def Jam). Barrow agreed to record two to five albums for which he would receive up to $3 million for the first album as well as 50 percent of Def Jam's net profits. Reportedly, he received an advance payment of $500,000. On or about August 30, 2004 the New York State Crime Victims Board notified the plaintiffs of Barrow's Def Jam contract pursuant to Executive Law § 632-a, commonly known as the "Son of Sam" law. Upon receiving such notice, Reuben moved for a preliminary injunction to prevent Barrow from dissipating the funds that had been or would be received by Barrow.

In an order dated November 18, 2004, the court temporarily restrained Barrow from disbursing the funds while Reuben's motion was pending. However, the court released $100,000 of the funds to Barrow in order for him to, inter alia, pay legal fees. About four months later, the court granted Reuben's motion for a preliminary injunction in an order dated March 16, 2005. The court held that Reuben demonstrated a likelihood of succeeding on the merits of her case and that she may suffer irreparable injury if the preliminary injunction was not granted as there was evidence that Barrow had dissipated a substantial portion of the funds already received by him.

Almost one year later, Barrow entered into a letter agreement, dated February 9, 2006, for representation by new attorneys, the law firm of Sandback, Birnbaum & Michelen (hereinafter SBM). The letter agreement set forth the firm's rate of payment and SBM agreed to submit a motion for the release of an additional $100,000 from the enjoined funds in order to cover its legal fees. It was agreed that SBM could withdraw as counsel if the motion for the release of such money was unsuccessful.

In an order dated April 26, 2006, the court, inter alia, granted the motion submitted by SBM on behalf of Barrow, and it directed the release of $100,000 from the enjoined funds to cover SBM's fees. For the reasons stated below, we reverse this order insofar as reviewed and deny the motion.

The motion for the release of $100,000 from the enjoined funds is, in effect, a motion to modify or partially vacate the preliminary injunction. A motion to vacate or modify a preliminary injunction is addressed to the sound discretion of the court

and may be granted upon "compelling or changed circumstances that render continuation of the injunction inequitable" (*Wellbilt Equip. Corp. v Red Eye Grill*, 308 AD2d 411 [2003]; *see* CPLR 6314; *People v Scanlon*, 11 NY2d 459, 462 [1962]; *Board of Trustees of Town of Huntington v W. Wilton Wood, Inc.*, 97 AD2d 781, 782 [1983]; *Dictograph Prods. v Empire State Hearing Aid Bur.*, 4 AD2d 508, 510 [1957]). In this respect, a court has "inherent power to modify its equitable directives" (*Wellbilt Equip. Corp. v Red Eye Grill, supra* at 411). However, when equitable relief is sought, as Barrow seeks it here, "moral considerations of fundamental importance require that the litigant come into court with 'clean hands' " (*Tepfer v Berger*, 119 AD2d 668, 669 [1986], quoting *Pecorella v Greater Buffalo Press*, 107 AD2d 1064, 1065 [1985]; *see Levy v Braverman*, 24 AD2d 430 [1965]; *see e.g. Corporacion Nacional del Cobre de Chile v Hirsch*, 242 AD2d 183 [1998]).

In the instant case, the record fails to demonstrate how compelling or changed circumstances render it equitable to release another $100,000 from the enjoined funds to pay for Barrow's attorney's fee. First, Barrow has not shown with any specificity how the release of $100,000 to SBM constitutes a reasonable fee for its representation in this case. Indeed, the record reveals that Barrow has changed attorneys on numerous occasions throughout this litigation and that the court previously ordered the release of $100,000 to cover his representation. Despite the prior release of such sum, the record reveals that Barrow failed to fully pay his prior attorneys. Under these circumstances, the court improvidently exercised its discretion in releasing another $100,000 for SBM's prospective attorney's fees when prior attorneys have not been compensated for the work they have already performed.

In addition, the plaintiffs allege that Barrow has acted inequitably with respect to the enjoined funds. They allege that he has dissipated about $190,000 of the funds in violation of prior orders of the court. They have also alleged that Barrow repeatedly failed to obey prior orders which required him to provide an accounting and inventory of all of his assets and businesses (*id.*). On this record, Barrow has not denied these allegations, and indeed, they form the basis of various contempt motions which were pending before the court, and remained undecided, at the time it granted Barrow's motion to release the sum of $100,000 to SBM. These contempt motions, however, have a direct bearing on whether Barrow is seeking modification of the preliminary injunction with "unclean hands." Thus, under the circumstances of this case, it was an improvident

exercise of discretion for the court to modify the preliminary injunction to release the sum of $100,000 while such motions regarding Barrow's inequitable conduct remained pending and undecided.

Barrow's remaining contentions are without merit. Miller, J.P., Rivera, Krausman and Goldstein, JJ., concur.